# Common Pleas of Luzerne Co.

### In Re Auditor's Report of Sheriff's Sale of
### L. Schlesinger's Real Estate.

First—Schlesinger was the owner of five shares of stock in a Building Association which he assigned as collateral security to the society for a loan of money. Sometime after this assignment a judgment creditor issued execution and sold the stock. Still later the real estate of Schlesinger was sold and the money arising therefrom distributed by an auditor. The assignment of the stock was noted on the book of the association. The society also took a judgment note from Schlesinger to secure the loan; upon which judgment was entered in court and became a lien against the real estate of Schlesinger.

Held: 1. That the assignment of this stock as collateral security established a privity of contract which invests the society with the ownership of the collateral for all purposes of dominion of the debt assigned. 2. That it was the duty of the judgment creditor to have strictly pursued the statute, which provides a mode for the levy and sale of stock held in the name of another person. 3. That the sale on execution did not divest the equity of redemption in Schlesinger.

Second—The fund in court in this case represents all that Schlesinger's real estate sold for. He is, therefore, a creditor stripped of all his tangible or valuable property, and the jurisdiction of the court having attached, equity comprehends within its grasp all incidental matters to enable it to make a full and final distribution and terminate litigation.

The questions here involved grow out of a sale of the real estate of L. Schlesinger and the distribution of the fund arising therefrom. It would seem Schlesinger being a member of a Building Association borrowed a sum of money therefrom and to secure the payment of the same assigned his stock as collateral, also confessing judgment for the amount of the loan. Barrow & Co., a judgment creditor, issued an execution and sold the interest of Schlesinger in the stock assigned. Subsequent to all this three executions were issued in the manner provided by law for the levy and sale of stock, but upon which nothing has been done since the service of them upon Schlesinger and the association. Still later an execution was issued by O. Howard Blood, one of the judgment creditors before referred to, upon which Schlesinger's real estate was sold and the fund now in court obtained. All other facts connected with the

foregoing are detailed in the report of the auditor which we present herewith.

## AUDITOR'S REPORT.

The Auditor, J. Vaughn Darling, Esq., filed his report as follows, to which exceptions were taken by counsel for the creditors:

\* \* \* The order of liens upon the property sold, as appears by the certified list of judgments and mortgages hereto annexed, is as follows: (Here the auditor set forth a tabulated statement of the liens.)

The fund arose from the sale upon a writ to No. 372, September T., 1877, upon a judgment to No. 947, November term, 1876, for the sum of $122.06, in favor of O. Howard Blood. The amount realized and now for distribution is nine hundred and fifty dollars.

The judgment of the W. B. Building and Savings Association to No. 3, February T., 1874, appears to have been paid, as to Schlesinger at least, and no claim was made in its behalf.

The counsel appearing before your auditor agreed to the following facts, which your auditor accordingly finds:

I. That the Wyoming B. & L. Association is a corporation duly incorporated under the general laws of this commonwealth relating to the incorporation of Building and Loan Associations.

II. That each share of the Wyoming Building and Loan Association gives to its owner the right to bid for a loan of two hundred dollars, and, if his is the highest bid, to receive that sum, less the premium bid, upon giving good real estate security and assigning the stock as collateral.

III. That on or about December 29th, 1870, Leopold Schlesinger being then the owner of five shares, effected a loan of one thousand dollars from the association, assigned the said five shares to them as collateral, and gave judgment for that amount to No. 154, February T., 1871, which judgment is the first lien on the property sold.

IV. That since that time Leopold Schlesinger has regularly paid ten dollars per month into the treasury of the association in full of dues and interest up to and inclusive of the month of July, 1877.

The auditor further finds as matter of fact, that a writ of Fieri Facias was issued upon the judgment of Jas. S. Barrow & Co. to No. 348, January T., 1877—tested February 16th, 1877, to No. 124, April T., 1877, upon which and two other writs, Nos. 125 and 126, April T., 1877, the interest of the defendant (Schlesinger) in five shares of stock in the Wyoming Building & Loan Association was sold to Chas. Foster, Esq., for the sum of $20. Mr. Foster testified that at that time he represented the judgments held by Barrow & Co., Early & Lane, and O. H. Blood, as well as the Building Association, and expected to give the former the benefit of the purchase. It appears from the testimony of George A. Wells, the Secretary of the Building Association, that L. Schlesinger became a member of the Association in February, 1870, having purchased five unincumbered shares of stock from another stockholder. He paid all dues on the stock up to December, 1870, when he effected the loan referred to at a premium of $74.00, or $370, for the $1,000. To secure this loan Schlesinger gave his judgment note for $1,000 which was entered January 10, 1871, to No. 154, February T., 1871, and assigned the stock as collateral. A copy of this assignment as contained in the Association's transfer book, and agreed to be a true copy, was put in evidence by Mr. Foster, without objection. (Here the auditor set forth a copy of the assignment.)

Schlesinger continued, as has been already stated, to pay the interest, dues, &c., on his loan up to and inclusive of the month of July, 1877; amounting to $790, for interest and $1.00, fine, which, with the amount paid before the loan for interest ($125.00), aggregated $915.00, exclusive of fines.

"On the 31st of March, 1879, the Association passed the following resolution, which was offered in evidence and admitted: BYE-LAW: Any stockholder having purchased a

loan shall have the privilege to retire from the Associa-
tion to the extent of said loan upon payment of all dues,
together with the interest thereon, for which he becomes
liable on said loan up to the first day of April A.D.,1878,
and upon transferring his stock to the Association."

On the 1st day of December, 1877, Messrs. Barrow &
Co., Early and Lane, and O. Howard Blood, the same
parties who had sold the stock on fi. fa.'s as the property
of L. Schlesinger, issued, by their counsel Mr. McGahran,
attachment executions upon the same stock as standing
in the name of the Association. So far as the testimony
before the auditor shows, nothing has been done with
these attachments, which, with the affidavits and bonds,
were put in evidence, subsequently to their service upon
Schlesinger and the Association. (The auditor here set
forth a notice given by A. R. Brundage, Esq., attorney
for Schlesinger, claiming that the actual value of the
stock assigned should be applied to the satisfaction of the
judgment, and that S. was ready at any time to make an
absolute assignment of said stock under the Bye-Law be-
fore quoted.)

There was no evidence whatever of any election by
Schlesinger prior to Nov. 22, 1877, and the testimony of
Mr. G. A. Wells, the secretary, is direct and positive that
Schlesinger never elected or offered to pay under the reso-
lution of March 31, 1876. It is obvious that at the thres-
hold of the case lies the question of the validity of the
sale of the stock to Mr. Foster upon the fi. fa., No. 124,
April T., 1877; since, if the purchaser took a legal title to
the stock, it follows that the Building Association is
entitled to the whole fund.

Can the stock of a Building Association assigned to it,
the Association, as collateral to its own loan to the stock-
holder, be levied upon by and sold under a writ of fieri
facias ?

The act of March 29th, 1819, section second, Acts of
1819, p. 226—7, Laws of Pa., Vol. 7, p. 217, is undoubt-
edly in force notwithstanding the act of 1836; and, under
its provisions, stock standing in the name of the defendant

and not claimed by another, may still be sold under a fi. fa. *Sex vs. Potters;* 4 *Harris,* 295. The scope of the act is in terms limited to cases "of stock owned by any individual or individuals," &c., "in his or their own names," and it is not the exclusive remedy. Attachment execution lies also. *Weaver vs. The Huntingdon R. R. Co.,* 14 *Wright,* 314. The stock in the case under discussion was assigned to the Association, as collateral, it is true, but none the less assigned. The Assignment would seem to have been duly entered on the transfer book of the association. Indeed the assignment itself was "offered as a true copy of the original as contained in the transfer book of the Association." The certificate itself was kept in the name of the borrower who was entitled to its possession, and no memorandum of the assignment was made on the face of the certificate. But this is immaterial, and would be even as against a purchaser of the certificate for value and without notice. *Bank of Commerce Appeal,* 23; *P. F. Smith,* 59. On the whole facts the auditor is of; opinion that the stock did not pass under the sale upon the fieri facias. Whilst in a certain sense the borrower, Schlesinger, owned the stock in his own name—yet this is not the sense intended by the act.

In all cases where the stock is subject to a charge or lien, and much more so where the stock has been assigned as collateral, it is essential, in the words of the present Chief Justice in *Weaver vs. The R. R. supra,* to the interest of all parties and to save litigation "that the proceedings by attachment should be resorted to, and the precise extent and character of the claim of the corporation ascertained before final execution." The machinery provided by the second section of the act of 1819 is wholly insufficient to effect justice in a case like the present, and it is only by a strained construction of the section itself that it can be made to appear applicable at all.

In *Mulford vs. Wersgerfer;* 3 *Leg. Reg.* 99, the stock had been assigned to and held by the Association as collateral to its loan. The Court held that the stock was "held in another name than that of the real owner thereof," and

therefore within the 32nd section of the act of 1836 requiring an affidavit and recognizance.

The auditor therefore finds that, subject to the assignment as collateral to the Association, Schlesinger owned the stock at the time of the Sheriff's sale.

This brings us to the second question: Is the value of the stock at the time of the Sheriff's sale to be applied in reduction of the judgment of the Association?

It would seem to be tolerably well settled that without an "election" on the part of either the borrowing stockholder or the Association to have dues ,&c., applied on account of the judgment, or rather the debt for which both the judgment and the stock are collateral, payment on stock will not be so applied. "Such payments are not *ipso facto* payments" on the lien. *North American Building Association vs. Sutton*, 11 *Casey*, 463. The rule is admirably stated by Agnew, C. J., in *Spring Garden Association vs. Tradesman Loan Association*, 10 *Wr.* 493. "Payments to stock are not *ipso facto* payment to the mortgage (judgment) debt or loan. It is true; according to former decisions, the mortgagor may apply his payments on the stock to the mortgage debt, a license to do so being implied in the nature of these building and loan transactions. The Building Association may also apply them by virtue of the terms of the assignment of the stock which is taken as a collateral security. But in order to effectuate application of payments on stock to the debt it requires an act of appropriation by one or the other of the parties. Strangers to the transaction stand upon a different footing. They can require nothing which the parties do not."

If this be a correct statement of the law, it follows that any election or appropriation on the part of Schlesinger would be valid and binding not only as against the Association itself, but as against all creditors not holding liens upon the stock. It is true that no appropriation was made by Schlesinger until after the sale; but is this necessarily fatal to his right to make such appropriation? It was strenuously argued by the counsel for the purchasers of the stock at the sale upon the fi. fa. and the creditors who subsequently attached the stock, that the sale of the

land concluded the debtor's right of election and principle was invoked that the course of distribution cannot be interfered with by the debtor. *Thomas, Appeal*, 19 *Sm.* 120, and cognate cases.

In the view of the auditor this principle does not apply to the case in hand. The auditor finds a judgment in fav or of the Building Association in the sum of $1,000. It is the first lien and *prima facie* entitled to the fund. But the debtor sets up the defence of payment, a defence clearly cognizable by an auditor. *Borland's Appeal*, 16 *Smith, p.* 470. It is immaterial to the Building Association from which of the two sources—the stock or the judgment—the payment is made to them, if, in point of fact they realize their debt. And the only objecting creditors, unless the Association can be considered as such, are those who by reason of the position of their several judgments cannot by any possibility take the fund; the whole contention on their behalf being that the fund should be applied to the judgment of the Building Association so as to free the stock for their benefit. It is urged in support of this position that the Association having two funds to look to should, in accordance with the equitable rule as to marshaling assets, be compelled to go upon that fund upon which these creditors have only postponed liens, and, in this distribution, liens that as such cannot be reached.

This argument assumes as its premise the existence of liens upon the stock. Suppose for a moment that no such liens exist. What is there to limit the right of the debtor to have payments on his stock applied to the judgment ? If the Association had brought suit he could have treated the payments on stock as payments on the debt. In this case the sale having been made upon another judgment, the debtor does what is practically the same thing, viz: appropriates the payment to the judgment. This is no more an "interference with the course of distribution" than is every attempt to let in a junior, by establishing the payment of a senior, judgment. The Association must of course be paid in full whatever is owing to it. And

the other judgment creditors can not complain for the effect of the election is to increase, not to decrease, the fund for distribution. Nor is this in any sense a case for the invocation of the decree as to marshaling assets. The three judgment creditors, apart from their position as attaching creditors, have no equity above the other lien holders who are not reached by the fund, and moreover the right to use the stock payments in liquidation of the judgment, does not extend to strangers. They, says Agnew, Justice, "can require nothing which the parties do not." 10 *Wr., Supra.* If there be a lien on the stock existing before the election then the holder might with great show of reason claim to confine the Association to the fund. Possibly even a demand for subrogation would be sufficient to conclude the debtor's right of election. But the auditor is of opinion that until some such step is taken, until a definite right in, or a lien upon, the stock, is obtained the right of election continues in the debtor up to the period of distribution.

The only question of importance remaining is whether the attachments, of Barrow & Co., Early & Lane. and O Howard Blood, are operative as against the election of the debtor.

The auditor has already found as matter of fact that the election or appropriation by Schlesinger was made at the first meeting of the audit Nov. 22, 1877, by a verbal notice and repeated in a modified form in writing at the second meeting Nov. 26, 1877.

The attachments are all tested December 1, 1877. Under the rulings of the auditor, if they be correct, it follows logically that these attachments bound nothing but the interest in the five shares of stock attached, after the application of their value at the time of the sheriff's sale, to the judgment of the Association, or, in other words, the balance if any, that might exist after the stock had paid the debt. The auditor desires to add that he has not reached these several conclusions without great doubt. The questions are novel, to some extent almost of first impressions, and the absence of authority has necessitated a general line of reasoning which may have led him into

grave error. There are several other considerations which support the conclusions arrived at by the auditor which it is not necessary to state in detail. Thus if the knowledge of the Association's counsel is the knowledge of the Association, the latter knew that the stock had been sold in March, 1877, and whether the sale was valid or not, by subsequently receiving from Schlesinger payments on the same stock, are estopped from denying his ownership in the stock. *N. Am. Building Association vs. Sutton*, 11. *Casey*, 463. It is also a question as to how far the creditors who have since the audit attached the stock, have thereby waived their title under the sale of the fi. fa. A large part of the testimony taken before the auditor was directed to the existence of usury in the judgments immediately following that of the Building Association. Upon the argument of the cause, however, this feature was abandoned and the questions for adjudication thus limited to those discussed by the auditor.

In carrying out the conclusions already stated it becomes necessary before formulating a table of distribution, to ascertain the value of the stock at the date of the sheriff's sale, viz: September 15, 1877, which is to be applied to the judgment of the Association. The only evidence before the auditor on the point of value is the resolution of the Association of March 31, 1876, providing that any borrowing stockholder might retire, so far as his loan was concerned, from the Association upon payment of all dues, together with interest on the loan up to the 1st of April, 1878, and upon transferring the stock to the Association; that is upon the payment of an estimated sum, viz: dues and interest to a fixed date, and the transfer of the stock to the Association would satisfy the judgment. If the stockholder in addition to the dues and interest paid the debt, he was entitled to $1,000 for his five shares of stock. This is the Association's own estimate of the value of the stock, adjusted and declared under a by-law and the figures calculated and sworn to by the secretary—Mr. Geo. A. Wells. Mr. Wells, speaking in the latter part of November, 1877, says that the amount due by Schlesinger on his loan under the provisions of the by-law of March 31,

1876, was $86.41, or, in other words, the payment of that sum would have entitled him, upon transferring the stock, to a satisfaction of the judgment. It may be said that the condition precedent of this offer is the transfer of the stock to the Association absolutely and that this is impossible until by the payment of the debt itself the stock held as collateral is relieved; but it is apparent that the intent of the by-law is to make the payment of the stipulated sum, the satisfaction of the judgment and the transfer of the stock to, and the consequent merger in, the Association a single indivisible act. In short, the payment of the sum thus estimated gave the borrower a stock value of exactly the amount of the judgment against him.

In order that there may be impossibility of mistake as to the figures, the auditor finds as a matter of fact from the testimony of the secretary that Schlesinger's liability on his loan in November, 1877, was the sum of $86.41, without counting in December. This sum of $86.41 is made up as follows, viz: Dues and interest on loan, $40.00; four months fines. $6.41, and advance payments under resolution of March 31, 1876, $40.00. Taking this as a basis it is a mere matter of calculation to ascertain that the amount required in September, 1877, to equalize the stock and the debt would be $91.00.

(Distribution as follows.)

Total fund, $950.00, from which deduct selling costs on writs; costs of audit and auditor's fee—$165.43, leaving $784.57 to be distributed.

To the first judgment of $1,000.00 in favor of the Wyoming Building Association, after deducting $909, the value of the stock, was given $91.00 and $7.50 costs, making a total of $98.50 and leaving to be distributed $686.07. The second judgment in favor of R. Silverbach, debt, interest and cost amounted to $667.05, which being deducted leaves a balance of $19.02, which must be divided in the proportion of nine to ten between the judgments of Sallie Utitz of $900 and of Tillie Oppenheimer for $1,000.

To the foregoing report the following exceptions were filed :

1st.—The auditor erred in refusing to recognize the existance of liens upon the stock.

2nd.—The auditor erred in finding that the Building Association are not compelled to go upon the real estate fund, which was their prime security, before having resource to the stock.

3rd.—The auditor erred in making inquiry into the validity of the sheriff's sale of stock.

4th.—The auditor erred in his finding that the sheriff's sale of stock was invalid.

5th.—The auditor erred in recognizing an alleged claim of the defendant to have the value of stock applied toward satisfying the Building Association judgment.

6th.—The auditor erred in refusing to allow the claim of the Building Association to have the fund arising from the real estate in payment of its judgment.

7th.—The auditor erred in finding that the defendant (Schlesinger) did not elect to have the stock applied in payment of his judgment to the Building Association.

8th.—The auditor erred in not reporting the facts separately instead of interspersing them among his conclusions of law and comments upon the evidence, thereby forming a complete jumble.

JOHN MCGAHREN, ESQ., FOR EXCEPTIONS.

An auditor is not invested with power to open a judgment of a court of competent jurisdiction and let the defendant into a defence on the ground that usurious interest is embraced, nor that judgment was taken for a sum greater than then due, nor on account of a defect in the proceedings to obtain judgment. The record is conclusive upon him. Neither has he the authority to declare a

sale upon execution process invalid by reason of any defect in the same,

> Brant's Appeal, 8 Harris. 141.

The court will check any attempt on the part of the auditor to encroach upon its jurisdiction or to usurp its authority.

> Gaston's Appeal, 1 Pitts, 48.

The Court of Common Pleas itself could not take cognizance of an attempt to invalidate the sale in a collateral proceeding.

> Wharton on Evidence, 2 Vol., 833.

A sheriff's return is a part of the record of the court, and an auditor cannot go behind the record to inquire into its correctness.

> Wharton on Evidence, 2 Vol., 833.
> Kindig's Appeal, 2 Weekly Notes, 680.

A sheriff's return can not be contradicted, but if false it is the duty of the party to have it corrected. Collaterally, if duly verified and within the jurisdiction of the court, it cannot be assailed.

> Wharton on Evidence, 833. a.
> Paxson's Appeal, 49 Penn., 195.
> Sample vs. Coulson, 9 W. & S., 62.

Courts of law as well as equity, in the distribution of a fund in the hands of the court, invariably apply the equitable principle that where one creditor has a lien on two funds, and another creditor has a lien on one only, the creditor having the lien on the two funds will be compelled to levy his execution and seek his satisfaction out of that fund upon which he alone has security, so that both creditors may be protected in their rights.

> Ramsey's Appeal, 2 Watts, 228.
> Bruen's Appeal, 7 W. & S., 269.
> Findlay vs. U. S. Bank, 2 McLean, 44.
> Trimmer vs. Bayne, 9 Vesey, 209.

When, in execution, the proper writ is not used, application should be made to the court from whence it issues to have the same stayed.

> Mulford vs. Weirgerber, 3 Leg. Reg., 99.

An execution, until quashed or reversed, is good, and a sale under it passes title to the purchaser.

> Stewart vs. Stocker, 13 S. & R., 204.

As to one court investigating or treating as a nullity an execution issued in another court, see

Stewart vs. Stocker, Supra.
Lawler & Wilmer's Appeal, 8 W. & S., 390.
Lewis vs. Smith, 2 S. & R., 142.
Wilkinson's Appeal, 15 Smith, 189.

As between conflicting execution creditors the sheriff's return cannot be gainsaid, and it is conclusive between the parties. Courts cannot alter the effects of a return, although in a proper case they may enlarge the time for making it, or may grant leave to amend it.

Mentz vs Hammar, 5 Whar., 155.

An execution, like a judgment, is valid until quashed or reversed and cannot be assailed collaterally except in cases of fraud.

4 Wharton, 341.

It was the duty of the auditor, in a case like this, to suspend distribution until the questions should be adjudicated by the court.

Dyott's Estate, 2 W. & S., 557.

### S. J. STRAUSS, ESQ., *Contra.*

If the Building Association had been paid in full the amount of its judgment out of the fund, leaving the stock free from the lien in favor of the Association, those judgment creditors whose liens upon the real estate were immediately subsequent to the Association, and who by such a distribution would have been unpaid, would have been entitled to subrogation to the Association lien against the stock, an equity that the auditor may work out in the course of the distribution. Nor can any alleged lien on the stock, in favor of subsequent creditors, by virtue of any execution process deprive them of this right.

Lloyd vs. Galbraith, 8 Casey, 108.
Ramsey's Appeal, 2 Watts, 228.
Dunn vs. Olney, 2 Harris, 221 & 223.
Del. & Hud. Appeal, 2 Wr., 512.

An auditor has especial power to work out such an equity when the debtor demands a defalcation of the stock.

Ramsey's Appeal, Supra.
D. & H. Appeal, Supra.

Where stock has been assigned to a Building Association as collateral security it cannot be levied and sold under the 2nd Sec., Act 1819, and that the stock so assigned happens to be stock in the very corporation to which it is assigned, does not change the operation of the law.

Lex vs Potter. 4 Harris. 295.
Weaver vs. R. R. Co., 14 Wr , 314.
Mulford vs. Weisgerber. 3 Leg. Reg.. 99.
Finney's Appeal, 9 P. F S., 393.

If such a sale was made it is void and the auditor may ignore it.

Bruner's Appeal. 11 Wr.. 67.
Edward's Appeal, 16 Sin. 89.

The treasurer and attorney of the Association, having purchased the stock at sheriff's sale and then sat by and seen the defendant make his regular monthly payments on the stock so purchased, is now estopped from denying the defendant's ownership of the shares and his right to appropriate them in satisfaction of the judgment.

N A. Bdg. Ass'n., 11 Casey. 433.
Wharton's Evidence, 1148.
Hill vs Epley, 7 Casey, 334.
Bigelow on E toppel, 511.

The attachment execution creditors are estopped by the record from denying that no title passed to the purchaser at fi. fa. sale. This record shows that the stock stood in the name of another, but before the attachment executions were issued the fund had been realized and the debtor had made his choice to have the stock applied.

Stevens vs. Hughes, 7 Casey. 381,
Bailey vs. Bailey. 41 Penn., 274
Weaver's road, 45 Penn., 405.
Wilson vs Hamilton, 9 S. & R., 274.

Opinion by HANDLEY, J., filed 24th January, 1879:

The questions involved in this case were argued with great force. The brief of counsel, on each side, shows very great research and thought. Notwithstanding it is alleged the learned auditor erred in his law, after a careful examination of each question raised and the authorities cited, we fail to find any serious error.

The important question in this whole case is—did the assignment of the Building Association stock as collateral divest the title of Schlesinger so far as to prevent sale on execution ? We are of the opinion that such an

assignment does divest, for the time being, title in the original owner.

Where a customer, by indenture, assigned a number of shares in a life insurance company, then standing in the name of the customer on the books of the company, subject to redemption on payment of a sum of money therein mentioned, and with a power of sale, an entry of this assignment was made in the insurance company's ledger, which company afterwards refused to recognize this transfer. It was held that the notice of assignment was sufficient, and that the circumstances sufficiently showed the bankrupt not to be the reputed owner of the shares at the time of the bankruptcy. *Exparte* Masterman, 2 M. & A., 209; Grant on Banking, 154.

So where A. insured the life of B., payable to A. on the death of B., immediately afterward A. assigned the policy to his banker as security for a loan or advance which was also secured by a mortgage of real property. It was held that the company had no right to call upon A. and the bankers to interplead, and the bill was dismissed with costs. Dessborough vs. Harris, 3 Eq. Reports, 1058. See also Butchart vs. Dresser, 10 Hare 453; 4 De. G. M. & G. 542; *Exparte* Dobson 2 M. D. & D. G. 685.

The English doctrine here explained is fully sustained in our courts. In the case of Hanna vs. Holton, 28 P., F. Smith 334, it was held that the assignment of a collateral security to a creditor, to hold for the security of his debt, establishes a privity of contract which invests him with the ownership of the collateral for all purposes of dominion of the debt assigned.

Where one was indebted to a bank in a sum much larger than the value of some stock of the bank. he owned, and it was verbally agreed that he should transfer the stock as collateral security for his indebtedness, and a power of attorney was accordingly drawn up for that purpose, it was held that this agreement operated as an assignment of the stock in equity. Lightner's Appeal, 1 Norris, 301. But where a creditor takes a mortgage, note, or other chose in action only as security for a preexisting indebtedness, and not for money advanced at the

time, he is not a purchaser for value. Petrie vs Clark, 11 S. & R. 377; Irwin vs. Tapp, Ibid 419; Hartman vs. Dowdel, 1 Rawle 282; Twelves vs. William, 3 Wharton 485; Depeau vs. Waddington, Ibid 220; Trotter vs. Shippen, 2 Barr 358; Ludwig vs Highly, 5 Barr 139; Kilpatrick vs. Muirhead, 4 Harris 123; Ashton's Appeal, 23 P. F. Smith 162.

It was the duty of the creditors here to have strictly pursued the mode pointed out by the statute when they originally proceeded against the stock held in the name of Schlesinger, notwithstanding it was assigned to the Building Association as collateral security. There was an equity of redemption in Schlesinger, sleeping, it is true, but nevertheless ready to tap at the conscience of a chancellor sitting in equity at the moment the loan to the Association was paid. 1 Purd. Dig. 639, § § § 29, 30 & 31; Com. vs. Watmough, 6 Wharton 117; Lex vs. Potters, 4 Harris 295; Weaver vs. Huntingdon R. R. Co., 14 Wr. 314.

The fund in court represents all that Schlesinger's real estate sold for. Here, therefore, is a creditor stripped of all his tangible or valuable property, save only his equity in the stock of the Association in question. It is to this fund the jurisdiction of this court has attached. Jurisdiction having attached, equity comprehends within its grasp all incidental matters necessary to enable it to make a full and final distribution, and therefore to terminate litigation while it affords a perfect remedy. Souder's Appeal, 7 P. F. Smith 502; Rice's Appeal, 29 P. F. Smith 182.

Subsequent to the assignment of this stock as collateral security, and subsequent to the sale of the same on the Barrow & Co. execution, Barrow & Co. sued out their execution on the first day of December, 1877, and attached these five shares of stock according to law. Several other creditors did the same prior to the filing of the report of the auditor in court. How far this estopped these creditors from denying that this stock was yet the property of Schlesinger need not be decided under our present views of this question.

We must, therefore, overrule the exceptions in this case and direct the fund in court to be distributed as directed by the auditor.

Exceptions overruled and report confirmed.