## UNGER *against* WIGGINS.

### IN ERROR.

Where it did not appear how long the defendant in an ejectment had been in
possession of the land in dispute, a lessee of the plaintiff, under an old lease,
who had probably been out of possession twenty years or more, and against
whom no suit had been brought, was *held*, in the absence of further evidence
to presume liability for mesne profits, not to be incompetent as a witness for
the plaintiff, on the ground of interest.

Though the acts of a deputy surveyor, done for the benefit of A., cannot be
given in evidence by him, in support of his own claim, without producing the
authority under which the deputy acted, yet the unauthorized act of the de-
puty, done, or attempted by the procurement of A. may be given in evidence
by B. to show the invalidity of A's. title.

Where a book, purporting to be a book of a deputy surveyor, containing his
field notes of a resurvey, had been frequently in evidence before the court,
and three times in the very cause under trial, without any question, and no
proof of hand-writing was called for, but it was objected to on other grounds,
*held*, that it was not error to permit it to be read to the jury, without proof
that it was the book of the deputy surveyor, or of his hand-writing.

WRIT of error to the District Court of *Dauphin* county.

Ejectment, in which the plaintiff in error was defendant below,
having been substituted as devisee in place of *George Unger*, de-
ceased, the original defendant.

The cause came up on three bills of exception to evidence.

1st. *Wiggins*, the plaintiff below, offered in evidence *(inter
alia*,) a lease of the land in dispute, granted by himself to one *Ja-
cob Shrike*, dated the 1st of *March*, 1797. After proving, that
*William Simonton*, the only subscribing witness to the lease, was
dead, he produced *Shrike*, the lessee, to swear that he saw *Simon-*

(Unger *v.* Wiggins.)

*ton* subscribe his name to the paper as a witness to its execution. This was opposed as not being the best evidence. *Shrike,* himself, was also objected to as a witness, on the ground of incompetency from interest, having occupied the land some time under *Wiggins,* and, therefore, liable to an action by *Unger* for the mesne profits. The evidence was admitted, and a bill of exceptions sealed. The *second* exception was to the deposition of *Thomas Smith,* with a diagram and drafts annexed, which need not be further stated, as it was not relied upon by the counsel of the plaintiff in error.

3. The plaintiff below, further to maintain the issue on his part, offered to read in evidence, from a book of *Bartram Galbraith,* page 716, notes, purporting to be the field notes of the said *Bartram Galbraith,* of a resurvey made for *George Unger* the 19th of *December,* 1792; to which offer the defendant objected, but the court, on argument, overruled the said objection, and directed the said notes, *without further proof,* to be read to the jury. The *third* exception was thereupon taken. *Galbraith* was dead at the time of the trial.

*Elder,* for the plaintiff in error.—*Shrike,* the witness, was liable to an action for mesne profits, unless the plaintiff below recovered the land. He was called, therefore, to testify for himself. As to the book, said to be *Bartram Galbraith's,* it was admitted in evidence expressly *without further proof;* that is, without proof of any authority to make the resurvey; without proof of any request, procurement, or knowledge of *Unger,* and without the least pretence of proof to the jury, that the book itself was *Galbraith's,* or even of the hand-writing. As to authority, none could possibly exist for the resurvey. It was of a tract already patented. Had the plaintiff below proved any agency or consent in the defendant, or those he claims under, it might have been evidence against him, though an unwarranted act. No proof of the kind was attempted; yet it was easily to be procured if the fact had been so. Why were not the chain carriers produced, or some one who was present, or at least the lines on the ground proved? The defendant is not to be held bound by the unauthorized act of a deputy surveyor; far less, is he to be bound by the mere private declarations of a surveyor, without evidence, except from those declarations, that the act itself has ever been performed. The declarations of the deputy surveyor are not evidence, though he dies before trial, and all his papers are burnt. *Bonnet* v. *Devebaugh,* 3 *Binn.* 175. A survey is not to be admitted without producing the authority for it. *Wilson* v. *Stoner,* 9 *Serg. & Rawle,* 39. Even supposing the book to have been brought from the surveyor's office, yet every document from the office is not therefore official. *Vincent* v. *Lessee of Huff,* 4 *Serg. & Rawle,* 299, relied on against us, is the very doctrine we contend for. It proves, that not the declarations only of the deputy surveyor, but even his acts, if without authority, are evidence

(Unger *v.* Wiggins.)

against no one. Here, if the book had been otherwise admissible, there was no semblance of authentication.

*Douglas* and *G. Fisher*, for the defendant in error.—It is very true, there was no direct formal evidence, that the book offered, was what it purported to be, and was from the deputy surveyor's office, nor that the hand-writing was Mr. *Galbraith's;* for, indeed, the book and the hand-writing were both as well known in our court-house, as the face of the gentleman himself while living. The necessity of swearing witnesses to the identity of the one or the other, would hardly occur to the mind; and this cause having been already tried three or four times, and the same book read on every trial, we may be excused for not offering on oath, solemn proof, which nobody asked for, of facts which nobody doubted. It is impossible to imagine, that the resurvey for *Unger's* benefit, was not procured and paid for by him. The plaintiff might very safely be challenged to produce the chain carriers after the lapse of more than thirty years, and when the transaction at the time must, from the nature of it, have been unknown to him. So far from denying that there was no pretence of authority for *Unger's* resurvey, it is what we chiefly insist upon. We offered the evidence for the sole purpose of showing, that this bare act of injustice was the only shadow of title at that time against our client. They cited *Miller* v. *Carothers, 6 Serg. & Rawle,* 215. *Vincent* v. *Lessee of Huff,* 4 *Serg. & Rawle,* 299. *Farmers' Bank of Lancaster* v. *Whitehill,* 16 *Serg. & Rawle,* 90.

The opinion of the court was delivered by

Top, J.—The subscribing witness being dead, proof of his hand-writing appears to have been well enough made out by one who saw him put his name to the very paper. I think no interest was shown to exclude *Shrike* as a witness. His lease was in 1797. How long *Unger,* the defendant below, against whom the witness was called, had been in possession of the contested spot, did not appear. But as no suit had been brought against *Shrike* for such a great length of time, and he had been out of possession probably twenty years or more, it would have been wrong, without further evidence, to presume, that any liability for mesne profits still existed against the witness. As to the admission of the book, purporting to be *Bartram Galbraith's,* and the field notes of the resurvey of the 19th of *December,* 1792, it had been shown already in the cause, that *Unger,* the defendant below, held one hundred and eighty acres on a warrant and patent, in the name of *Jacob Garver,* granted prior to the revolution; the piece of land in dispute being about twenty-two acres, adjoining the said one hundred and eighty acres tract of *Unger. Wiggins,* the plaintiff below, claimed the twenty-two acres under a warrant for for one hundred acres, dated the same 19th of *December,* 1792, granted to *George Runion,* and calling for *Jacob Garver's* survey as one of its boundaries; that is

(Unger *v.* Wiggins.)

to say, covering the ground in question in this cause. On this warrant for one hundred acres, Mr. *Galbraith* was the surveyor who made the survey for *Wiggins;* and in making it, instead of adjoining the line of *Unger,* it appears that he left out the twenty-two acres, now in dispute, next to *Unger's* tract. *Wiggins* complained of this as injurious to him, and as excluding some of the best of the land. Therefore, he, *Wiggins,* petitioned the Board of Property, and obtained an order for a resurvey. And on the 21st of *May,* 1806, a resurvey was made for him by *Levy G. Hollingsworth,* deputy surveyor, of one hundred and a half acres, including the land in dispute, according to the call of the warrant, and throwing off a part of the former survey next the mountain. But before this resurvey by *Hollingsworth* for *Wiggins,* viz. on the 6th of *January,* 1802, *Unger* had obtained a warrant for thirty acres, and on the 17th of the same month, a survey on it, including the twenty-two acres in question. There were other matters of fact contested in the cause not material to be stated. *Galbraith's* book and notes of the resurvey were objected to on behalf of *Unger,* because the resurvey being wholly without authority, could not be legal evidence; and, because there was no proof of the resurvey having been attempted at the request, or with the knowledge of *Unger,* the defendant, or of any one under whom he claimed. These objections were overruled by the court below, very rightly, in my opinion. Because, by the rule of law, the acts of a deputy surveyor, done for the benefit of A., shall not be given in evidence by A. to support his own claim, without producing the authority under which the deputy acted, it by no means follows, that the unauthorized act of the deputy, done, or attempted by the procurement of A., shall not be given in evidence by B. to expose the invalidity of A's. title. Here, the total absence of all pretence of right to extend the lines of *Unger's* patented tract, so as to include the twenty-two acres, was the very matter which made the evidence material to the plaintiff below. It was strong proof, that *Unger,* on the day of the date of the plaintiff's warrant, had no legal or equitable title to the land. Equally strong was it to support the allegation of *Wiggins,* that the first survey on his warrant, by Mr. *Galbraith,* had been returned injuriously, by throwing out the land in question; and strong, also, to show for what purpose, and in whose favour the thing was so done. But, it is said, the unlawful act of the deputy shall not be thus visited upon. *Unger,* without some evidence to show *Unger's* procurement, or in some respect, to implicate him in the matter. Most clearly the law is so. But equally clear it is, in my opinion, that the able judge (the Hon. Charles SMITH,) who tried this cause, peculiarly versant in these questions of original title, and whom, as he is no longer on the bench, I may be permitted to mention in this way, so directed the jury. We have not the charge before us, nor was it excepted to by either party. *Unger's* concurrence in the resurvey, was a matter of fact. Though it was a fact to be proved, yet it was

(Unger *v.* Wiggins.)

not required to be proved by an eye witness. Unless contradicted, or explained, the evidence to implicate *Unger*, would seem to me almost conclusive. The illegal resurvey was all for *Unger's* advantage, or supposed advantage, and in no way for the advantage of *Galbraith*, or of any other person. *Unger* claimed the ground thus taken in by the resurvey, and his devisee yet claims it. He owned the tract thus attempted to be enlarged; and on the first survey on *Wiggins'* warrant, made on the 13th of *August*, 1795, Mr. *Galbraith* notes on the margin of the draft, the land in dispute as the property of *Unger*.

It is said, there was no proof that the book had been Mr. *Galbraith's*, or of the hand-writing; and so it does appear from the record. But it is not denied that the book had been before in evidence innumerable times in the courts of *Dauphin* county, and three times in this same cause, without any question; and, that there was no call for proof of hand-writing. This part of the case would, therefore, seem to fall under the rule applicable to matters of practice, that sometimes, what is not expressly denied is admitted; and, that to specify some objections to evidence, waives all objections not mentioned.

Judgment affirmed.