**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ronald Henry WILSON,
Defendant-Appellant.**

No. 75–3018.

United States Court of Appeals,
Ninth Circuit.

May 5, 1976.

George W. Hunt, San Diego, Cal., for defendant-appellant.

Terry J. Knoepp, U. S. Atty., San Diego, Cal., for plaintiff-appellee; Howard A. Allen, Asst. U. S. Atty., San Diego, Cal., on the brief.

## OPINION

Before SMITH,* and GOODWIN, Circuit Judges, and WILLIAMS,** District Judge.

### J. JOSEPH SMITH, Circuit Judge:

Ronald Henry Wilson appeals from conviction on trial to the jury in the United States District Court for the Southern District of California, Gordon Thompson, Jr., *Judge*, on five counts charging conspiracy, unauthorized possession of a military identification card and possession within the special territorial jurisdiction of the United States of completed and blank and unfinished money orders with intent to defraud, prohibited by the California Penal Code made applicable to government reservations by the Assimilated Crimes provisions of 18 U.S.C. § 13. We find no error and affirm the judgment.

Wilson, convicted on charges growing out of a scheme to pass stolen money orders at North Island and Imperial Beach Naval Air Stations by use of a stolen military identification card, attacks the sufficiency of the evidence particularly on the possession counts. He attacks also the sufficiency of the evidence establishing federal jurisdiction and its admissibility. He claims on a separate ground that the trial court erred in allowing one of these counts, count 20, to go to the jury. And finally he asserts that his sentence on the conspiracy count is excessive.

■ On appeal we must view the evidence in the light most favorable to the government. *United States v. Kelly*, 527 F.2d 961 (9th Cir., 1976).

■ There was evidence that on January 13, 1975, Wilson drove Johnson and Jones in Wilson's sister's Thunderbird to a YMCA to obtain a photograph of Jones for use on a stolen military identification card, thence to North Island and Imperial Beach Naval Air Stations where, using the card, Jones cashed stolen money orders. As had been agreed, the proceeds were split three ways.

On January 14, Harmon, Johnson and Wilson agreed to a similar scheme. They obtained at the YMCA a photograph of Harmon to place on the same stolen identification card. Wilson then drove them to the North Island Naval Air Station, where Harmon attempted to cash money orders and was arrested. Following Harmon's arrest an FBI agent found blank money orders in the Thunderbird, one of which bore Wilson's fingerprint. The evidence was thus ample to establish the illegal scheme and Wilson's participation.

* The Honorable J. Joseph Smith, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

** The Honorable Spencer M. Williams, United States District Judge for the Northern District of California, sitting by designation.

The conspiracy having been proved, possession by the co-conspirators in the course of the conspiracy was Wilson's possession. *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

Federal jurisdiction was sufficiently established by letters of cession,[1] a map, and oral testimony elicited from employees of the Navy exchanges where Jones and Harmon passed or attempted to pass stolen money orders, from the FBI agent who found the other orders in the Thunderbird, and from an experienced Navy realty specialist and draftsman.

■ The admission of Government Exhibit 25, a map referred to in the testimony of the realty specialist, establishing federal jurisdiction over the areas in which two of the alleged crimes were committed, was well within the court's discretion. The map was identified as one prepared and maintained under the supervision of the Naval department charged with responsibility for real estate acquisition and management in the area. The witness was sufficiently qualified on cross-examination as an expert draftsman and cartographer.[2]

■ Counsel objected to a charge on one of the possession counts since it had not been read to the jury at the outset of the trial. The judge indicated his intention to set aside any guilty verdict on that count if the record should prove that it had not been read. Subsequently, however, he declined so to set it aside. We find no error here, since the count was in the indictment, the evidence before the jury supported it and the jury was charged upon it. While the reading of the count at the outset was intended, no harm resulted from its omission at that time.

■ Finally, the sentence on count one is attacked as in excess of the maximum applicable. Conspiracy to commit a felony and a misdemeanor was charged, the verdict on the count did not distinguish, and the sentence exceeded that possible for the misdemeanor. The judge, though aware of the problem, ruled that since the sentences on all counts were concurrent and on some other counts equalled or exceeded the sentence on count one, the apparent excessiveness on that count was immaterial. In the absence of reversible error on other counts, this is correct. *Barnes v. United States*, 412 U.S. 837, 848, 93 S.Ct. 2357, 2364, 37 L.Ed.2d 380, 389 (1973); *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Hirabayashi v. United States*, 320 U.S. 81, 85, 63 S.Ct. 1375, 1378, 87 L.Ed. 1774, 1778 (1943); *United States v. Westover*, 511 F.2d 1154 (9th Cir.), *cert. denied*, 422 U.S. 1009, 95 S.Ct. 2633, 45 L.Ed.2d 673 (1975).

Affirmed.

---

1. Referred to in the record as "cessation."

2. *Cf.* Rule 901(b)(7), Federal Rules of Evidence; 28 U.S.C. § 1733; *United States v. Meyer*, 113 F.2d 387, 397 (7th Cir. 1940).