UNITED STATES of America, Appellee,

v.

**George MOSS and American Identification Products, Defendants-Appellants.**

**No. 1319, Docket 77–1134.**

United States Court of Appeals,
Second Circuit.

Argued June 20, 1977.

Decided Sept. 6, 1977.

---

158

Graham Hughes, New York City, for defendants-appellants.

Edward R. Korman, Chief Asst. U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., of counsel), for appellee.

Before MULLIGAN, GURFEIN and VAN GRAAFEILAND, Circuit Judges.

GURFEIN, Circuit Judge:

This is an appeal from judgments of conviction entered upon a jury verdict in the United States District Court for the Eastern District of New York (Platt, J.). Appellant George Moss was convicted on eleven substantive counts of bankruptcy fraud under 18 U.S.C. § 152, and on one count of conspiracy to violate that section. Moss was sentenced on each count to two years imprisonment, with eighteen months suspended (all twelve counts to run concur-

rently), and to a fine of $1,000 on each count, amounting to a total fine of $12,000. Appellant American Identification Products was convicted on one count of fraudulently receiving property from a bankrupt under 18 U.S.C. § 152 and was sentenced to a fine of $5,000. The bankruptcy petition on behalf of Stafford Manufacturing Co. was filed and Stafford was declared a debtor-in-possession on August 10, 1970. Stafford was adjudicated a bankrupt and a Trustee was appointed on August 10, 1972.

In Counts One and Three of the Indictment, Moss was charged with fraudulently concealing various items of property of Stafford, of which he was president, in contemplation of bankruptcy. Counts Two and Four charged that he fraudulently concealed these same items of property from the Trustee in bankruptcy and the creditors after Stafford was adjudicated a bankrupt. Counts Five and Six also charged concealment of the same item of property before bankruptcy and from the Trustee, respectively. Count Five was subsequently dismissed on the Government's motion. Counts Seven, Eight, Nine and Ten alleged that Moss also fraudulently concealed additional items of property from the Trustee and creditors. In Counts Eleven and Twelve, Moss was charged with fraudulently withholding from the Trustee documents relating to the property which was the subject of Counts One, Two, Three and Four. Moss was convicted on all of these counts.[1]

In Count Fourteen, Moss was charged with conspiring with co-defendant Arnold Rubin and others unknown, to commit offenses in violation of 18 U.S.C. § 152. Although Rubin was acquitted on this count, Moss was convicted. Defendant American Identification Products was convicted on Count Thirteen, charging that it had fraudulently received property from a bankrupt.

Appellant George Moss urges three grounds for reversal. First, that there was insufficient evidence to support the jury verdicts on Counts One, Three, Six, Seven, Eight, Ten, Eleven, Twelve and Fourteen. Second, that the convictions on the substantive counts were multiplicitous. Third, that the use in cross-examination at trial of Moss' prior immunized testimony before the bankruptcy court, was improper and requires reversal.

I

■ We deal first with Moss' contention that the convictions are multiplicitous.[2] Moss' position on this issue has three facets. First, he urges that Counts One and Three, which charge concealment of certain property in contemplation of bankruptcy, merge respectively into Counts Two and Four, which charge the actual concealment of the *same* property from the Trustee and the creditors. The Government concedes that the offense of concealment in contemplation of bankruptcy merges with the offense of concealing assets after the bankruptcy petition has been filed, much as an attempt to commit a substantive crime merges upon conviction of the substantive offense. The Government specifically concedes that the conviction on Count One merges with the conviction on Count Two, and that the conviction on Count Three merges with the conviction on Count Four, so far as imposition of sentence is concerned.

■ Appellant also contends that Counts Eleven and Twelve, which charge Moss with concealing the registration papers relating to two motor vehicles, also merge with Counts Two and Four, which allege the fraudulent concealment of those vehicles themselves. The Government specifically concedes this point as well, noting that concealment of the documents was simply

---

**1.** Count Five, as we have noted, was dismissed on the Government's motion.

**2.** Although defendant Moss failed to complain at trial that the indictment was multiplicitous, the Government concedes that he still may raise the point on appeal, but only to the extent

that multiplicitous convictions have resulted in the imposition of a sentence in excess of that which could be imposed for a single offense. Cf. *United States v. Private Brands, Inc.,* 250 F.2d 554, 557 (2d Cir. 1957), *cert. denied,* 355 U.S. 957, 78 S.Ct. 542, 2 L.Ed.2d 532 (1958).

part of the means by which the offense of fraudulent concealment was accomplished. *Cf. United States v. White,* 417 F.2d 89, 93 (2d Cir. 1969).

The Government does not similarly accept Moss' broader merger argument, however, that as a matter of statutory construction, the various charges alleged in the indictment constitute only a single bankruptcy fraud under 18 U.S.C. § 152, and hence that conviction was proper only on one count. Relying on *Edwards v. United States,* 265 F.2d 302 (9th Cir. 1959), Moss maintains that concealment of a number of different pieces of property constitutes only one offense. We have no difficulty with the *Edwards* decision nor, in the context of that case, with the legal principle which Moss draws from it. We disagree, however, with Moss' contention that *Edwards* is applicable to this case.

In *Edwards,* the defendant was charged in eight separate counts with the fraudulent concealment of eight items of property *before* the filing of the bankruptcy petition. The Ninth Circuit therefore reasoned that:

"The gist of the offense charged in each of the eight counts . . . is the failure . . . to reveal or disclose on or after [the filing of the petition], property belonging to the bankrupt. . . . Surely, if an accused should conceal a dining room set, a china set, or one thousand silver dollars belonging to the estate of the bankrupt, his offense of failure to reveal or disclose would not be multiplied by the number of separate items concealed. The fact that several different items of property belonging to the estate of a bankrupt were concealed does not multiply the number of offenses, even though the concealment of any one of the items standing alone would constitute the offense denounced by the statute. The offense . . . does not arise until there is a duty to reveal or disclose . . . ."

265 F.2d at 306.

■ It is true that when the concealment of several items of property *precedes* the filing of the bankruptcy petition, the

duty to disclose the transfers to the receiver or trustee is a single duty to reveal all. When the concealment of assets belonging to the bankrupt occurs after a receiver or Trustee has been appointed, however, each separate act of concealment is a separate violation of the statute. *United States v. Kaldenberg,* 429 F.2d 161 (9th Cir. 1970), cert. denied, 400 U.S. 929, 91 S.Ct. 195, 27 L.Ed.2d 189 (1970). In each such instance there is a separate act, taken at a discrete time, accompanied by the requisite intent. Any other rule would permit a defendant who has committed a first concealment to steal more on the theory that he would never become a sheep but always remain a lamb. It is not in the interest of deterrence to permit a multiplication of criminal acts to be treated as a bonus for the criminal actor free from additional penalty.

■ Counts Eight, Nine and Ten involved the conversion of checks received on three separate occasions after the bankruptcy proceeding had begun. These counts are clearly not multiplicitous. Counts Two and Four involved the execution of fraudulent affidavits of sale on December 6, 1972 (as well as the initial physical concealment of a GMC truck, and a Chevelle station wagon). Count Six charged the concealment from the Trustee of a Clark fork-lift type truck. Count Seven involved the illegal transfer of three Benchmaster presses at the time of an auction sale of Stafford's inventory in September, 1972 (as well as certain acts of concealment prior to the filing of the petition).

■ The foregoing analysis reveals that, although Counts One, Three, Eleven and Twelve were duplicative, separate convictions were permissible on Counts Two, Four, Six, Seven, Eight, Nine and Ten.

■ Moss was not prejudiced by the imposition of *concurrent* sentences of two years' imprisonment (eighteen months suspended), since conviction on a single count could support a sentence of five years' imprisonment. *United States v. Wilson,* 535 F.2d 521, 523 (9th Cir. 1976) (J. Joseph Smith, Circuit Judge); *United States v.*

*Smith,* 532 F.2d 158, 160 (10th Cir. 1976); *Benton v. Maryland,* 395 U.S. 784, 791, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *United States v. Hines,* 256 F.2d 561, 562–63 (2d Cir. 1958). Appellant argues that he may have been prejudiced in sentencing because he stood convicted of twelve substantive counts rather than six. We disagree. The district judge, well aware of the related nature of the substantive counts, directed that the twelve terms of imprisonment be served concurrently, indicating that he was considering the defendant in relation to the entire scene. Moreover, the sentence imposed was far more lenient than the maximum sentence that he could have imposed on a single count.

## II

■ Appellant Moss attacks the sufficiency of the evidence on Counts One, Three, Six, Seven, Eight, Ten, Eleven, Twelve, and Fourteen, the conspiracy count. Our disposition of the multiplicity issue, and the concurrent sentence doctrine, makes it unnecessary to consider this claim with regard to Counts One, Three, Eleven and Twelve. A review of the remaining counts reveals that the evidence was sufficient.

Count Six charged the concealment from the Trustee of a Clark fork-lift type truck. Witness Seifer, a former employee of Stafford, testified that the fork-lift had been hidden by Moss and locked in a separate room and that the room had affixed to it a sign which read "Galgan Realty," giving the appearance that it was a place of business distinct from Stafford. The fork-lift was found in the possession of American Identification Products, controlled by Moss.

As for Count Seven, involving concealment of three Benchmaster presses, defendant Moss conceded at trial that he had removed some machinery out of the Stafford plant, but denied that these were items of property of the bankrupt. However, there was testimony by Seifer that he removed several presses from Stafford's plant, at Moss' direction, in August, 1972. Three presses previously owned by Stafford were discovered subsequently on the premises of American Identification Products. We agree with the Government that the jury could infer from this evidence that Moss concealed from the Trustee presses owned by Stafford.

In Counts Eight and Ten, it was alleged that on separate occasions subsequent to the adjudication of bankruptcy, Moss received checks payable to Stafford, cashed them, and failed to turn over to the Trustee either the checks or the proceeds. It is Moss' position that he lacked any fraudulent intent, however, because he entertained a bona fide belief that these checks were in fact his personal property and not that of the bankrupt. Moss urges that the checks were payments for work which he personally performed (pursuant to a contract between Stafford and the Navy) after the adjudication of bankruptcy. It was within the jury's province, however, to reject this defense. Moss sought to have these checks made payable to him personally; when he was unable to do so, he nevertheless cashed them himself. He did not seek legal advice on the propriety of his conduct, nor did he inform the Trustee of his actions. The jury had the right to conclude that Moss acted with fraudulent intent and to disbelieve his testimony to the contrary.

Count Fourteen alleged that Moss conspired with a codefendant, Arnold Rubin, and others unknown, to violate 18 U.S.C. § 152. Since Rubin was acquitted the question is whether there was, nonetheless, evidence of a conspiracy between Moss and another person not named in the indictment. We agree with the Government that there was evidence from which the jury could have inferred that Moss conspired with his brother, Nat Moss, who also was a principal of Stafford. We, therefore, sustain the conviction for conspiracy. *See United States v. Green,* 421 F.2d 1237 (2d Cir. 1970). *And see Rogers v. United States,* 340 U.S. 367, 375, 71 S.Ct. 438, 95 L.Ed. 344 (1951).

## III

The remaining issue on this appeal concerns the use on cross-examination of appel-

lant Moss at trial of testimony given by him before the bankruptcy court. Moss claims that the use of his prior testimony violated the immunity grant conferred by 11 U.S.C. § 25(a)(10), which provides that

"no testimony, or any evidence which is directly or indirectly derived from such testimony, given by [the bankrupt before the referee] shall be offered in evidence against him in any criminal proceeding, except such testimony as may be given by him in the hearing upon objections to his discharge."

The Government contends that its use of Moss' testimony at the criminal trial for impeachment was permissible under § 25(a)(10) and under the self-incrimination clause of the Fifth Amendment.

The Government argues, moreover, that Moss waived his right to object to use of his testimony because his counsel failed to make a timely objection at trial.

### A.

At trial, Moss indicated on direct examination by his own counsel that he had "appeared" before the Bankruptcy Court. The prosecutor immediately requested a sidebar conference in which the following exchange took place:

"[The prosecutor]: Your Honor, if [counsel] *asks the next question,* which I anticipate will have to do with any proceeding before the Bankruptcy Court, I wish the Court to recognize that the Government will take the position that any privilege under the Fifth Amendment will be completely and inexorably waived. (Emphasis added.)

"The Court: He does that anyway now when he takes the stand.

"[Defense counsel]: He does that when he takes the stand.

"[The prosecutor]: All aspects of the Fifth Amendment are waived, correct?

"[Defense counsel]: That is my understanding, if he takes the stand, he waives the Fifth.

"[The prosecutor]: I want to be absolutely clear because this is a bankruptcy case and there are some possible ramifications.

"[Defense counsel]: That is information you have given and I appreciate the efforts you have made to make sure that something untoward did not happen, and I say that with all seriousness. I was not going to go into detail. I just wanted to get the date of his first knowledge and that is it.

"[The prosecutor]: That may be your attempt, [counsel], but I merely advised the Court—

"The Court: Once he takes the stand anyway he has waived it.

"[The prosecutor]: That includes the Fifth Amendment that accrues under Title Eleven.

"The Court: Yes, surely."

The "next question" was never asked. Defense counsel did not follow up by asking any questions of Moss about his testimony in the bankruptcy hearing. We have no problem, therefore, of counsel's "opening the door", *cf. Walder v. United States,* 347 U.S. 62, 65–66, 74 S.Ct. 354, 98 L.Ed. 503 (1954), where the defendant "of his own accord" opened the door for impeachment. *But cf. Agnello v. United States,* 269 U.S. 20, 35, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

Though defense counsel did not follow up by questioning appellant about his testimony before the Bankruptcy Judge, the prosecution nevertheless proceeded to cross-examine appellant on answers he had given before Bankruptcy Judge Price, to which defense counsel interposed *no objection.* The cross-examination resulted in admissions by appellant that he had perjured himself in the bankruptcy proceeding. Certain other inconsistencies with his present testimony were also developed. In general, the cross-examination was directed to countering Moss' testimony that he had never concealed property with the requisite criminal intent. After the cross-examination had been completed, defense counsel, several days later, moved for a mistrial on the ground that the Government had made improper use of the defendant's testimony in the course of the bankruptcy proceeding. The court held that the failure to object

constituted a waiver. We thus face the preliminary question whether testimony given under the use immunity provision of the Bankruptcy Act may be used as impeachment material if the defendant takes the stand and no objection to such use is raised. We believe this to be a question of first impression under the present Bankruptcy Act.

■ The testimony given by the bankrupt was *compelled* by Section 25(a)of the Bankruptcy Act, as the Government concedes. *See United States v. Dornau*, 491 F.2d 473 (2d Cir. 1974). The compulsion was constitutionally justified only because the use immunity granted, including a prohibition against derivative use, was coextensive with the constitutional privilege against self-incrimination. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The earlier Bankruptcy Act of 1898 did not prohibit derivative use of the bankrupt's testimony and hence was not coextensive with the privilege. *See Arndstein v. McCarthy*, 254 U.S. 71, 73, 41 S.Ct. 26, 65 L.Ed. 138 (1920); *and see Counselman v. Hitchcock*, 142 U.S. 547, 564–65, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). Under that statute the prohibition against use of the testimony came into play only if the bankrupt *voluntarily* surrendered his privilege. He could not be prevented from standing upon it because the use immunity then being tendered fell short of being coextensive with the privilege.

In such circumstances, the prohibition against use of the testimony was not a constitutional prohibition but rather a bargain made in exchange for testimony that could not have been compelled. Considering such a statute, the Supreme Court held that "it prescribes a rule of competency of evidence which may or may not be insisted upon. It does not declare a policy the protection of which cannot be waived. And the time to avail of it is when the testimony is offered." *Burrell v. Montana*, 194 U.S. 572, 577, 24 S.Ct. 787, 788, 48 L.Ed. 1122 (1904); *accord, Bain v. United States*, 262 F. 664, 669 (6 Cir. 1920).

On the other hand, since under the present Bankruptcy Act section, 11 U.S.C. § 25(a), the bankrupt is *compelled* to testify, the immunity granted must be coextensive with the privilege. The scope of the required immunity was carefully set forth by Mr. Justice Powell in *Kastigar, supra*. In upholding as constitutionally sufficient the use and derivative use immunity of 18 U.S.C. § 6002, he noted:

"Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness." (Italics in original) 406 U.S. at 453, 92 S.Ct. at 1661.

The Court went on to state:

"As the Murphy court [*Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964)] noted, immunity from use and derivative use 'leaves the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege' in the absence of a grant of immunity." 406 U.S. at 458–59, 92 S.Ct. at 1664.

For a similar statement by the *Kastigar* Court, *see* page 462, 92 S.Ct. at page 1666. *And see Lefkowitz v. Turley*, 414 U.S. 70, 77–78, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973).

"As if the witness had claimed [his] privilege," *supra*, can only mean that the sole weapon left in the prosecutorial armory is the silence of the defendant. And the silence of the defendant would not be available as a subject for cross-examination.

■ This seems to us to mean that the prohibition against the use and derivative use of the testimony is constitutionally required if the immunity granted is permitted to *compel* the testimony of the bankrupt. Now there is no longer a bargain but a naked compulsion sufficient in scope to preserve the privilege against misuse.

■ Since it is a constitutionally required *quid pro quo* to justify the compulso-

ry process against the bankrupt, the prohibition rises to the dignity of a constitutional right rather than a mere bargain as it was under the 1898 Bankruptcy Act. Accordingly, *Burrell, supra,* is not dispositive on the issue of waiver.

▅▅▅▅▅ We think that a waiver in these circumstances requires an intentional relinquishment of a known right by the client rather than by the lawyer. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Fay v. Noia,* 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). *See Schneckloth v. Bustamonte,* 412 U.S. 218, 242, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). This is not a case where an affirmative timely motion on a "particular kind of constitutional claim" is required by rule or statute. *Davis v. United States,* 411 U.S. 233, 239–40, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). *Cf. Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). It is a case where the prosecution is required to respect the immunity granted. The constitutional validity of use immunity as distinguished from transactional immunity depends upon a fair adherence to the integrity of the process. Here the Government should at least give notice of its intention to use the bankrupt's testimony and afford a reasonable opportunity to the defendant to consider whether he wishes to waive the constitutional protection he has been granted under compulsion. We are constrained by our reading of *Kastigar* to reject the Government's claim of waiver based upon ignorance of counsel.[3]

Though we cannot agree with the District Court that appellant waived his right by his counsel's failure to object, we think the result reached in refusing a mistrial was correct on other grounds, and we affirm the conviction, except for Count Three which the government concedes should be reversed for insufficiency.

## B.

▅▅▅▅ The prosecution urges that the immunized testimony could properly be used for impeachment on cross-examination, in any event, even though it could not have been used as direct evidence. For this anomaly it relies upon *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) and *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). Those cases hold that evidence rendered incompetent for affirmative use by the prosecution through failure of the police to adhere to procedural constitutional standards under the Fourth and Fifth Amendments may, in some circumstances, nevertheless, be used for impeachment when the defendant chooses to take the stand. The rationale of *Harris* is that there is effective enough pressure on the police to conform to constitutional standards by excluding evidence illegally obtained during the case in chief, or as independent evidence in rebuttal, but that no additional sanctions are required when the defendant is impeached on his credibility when he commits perjury on the direct examination.

▅▅▅▅ Implicit as well is the consideration that "there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." *Walder, supra,* 347 U.S. at 65, 74 S.Ct. at 356.

▅▅▅▅ This emphasis on perjury is much like the exception for perjured testimony in the general immunity statute, 18 U.S.C. § 6002, and the implied exception in the Bankruptcy Act. *Glickstein v. United States,* 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911); *Bryson v. United States,* 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1964). The immunity grant does not protect perjury committed before trial under "immunity" any more than exclusionary rules protect perjury committed at trial.

▅▅▅▅ The *Harris-Walder* line does not, however, sanction a general use of immunized testimony for purposes of impeachment, as the able counsel for the

---

3. In fairness we note that the able appellate counsel did not try the case below.

Government suggests. Only where perjury is committed does the exception prevail. Thus, the argument of the Government that even truthful statements made in the bankruptcy proceeding may be used for impeachment is unpersuasive. *Cameron v. United States*, 231 U.S. 710, 34 S.Ct. 244, 58 L.Ed. 448 (1914); *United States v. Hockenberry*, 474 F.2d 247 (3d Cir. 1973); *and see United States v. Housand*, 550 F.2d 818 (2d Cir. 1977). Even in a trial for having made false declarations before a Grand Jury, the use of such truthful statements on cross-examination is not sanctioned by *Harris, supra. United States v. Hockenberry, supra.*

▮ In this case, the issue may be further refined, however. Significant parts of his prior testimony were conceded to have been perjurious by the appellant himself. The use immunity had been dissipated so far as the testimony was wilfully false. And the acknowledgment by the defendant that it was perjurious rendered it usable. Though the prosecutor proceeded at his peril, in the first instance, *Cameron, supra; Hockenberry, supra*, the subsequent admission of perjury by the witness himself demonstrated beyond cavil that the exception for perjured testimony was applicable, somewhat as the subsequent hearing in *United States v. Tramunti*, 500 F.2d 1334, 1339 (2d Cir.), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974), was held to support the result.

▮ The difficult issue remains that the only authorities applying the perjury exception thus far have involved perjury prosecutions or the like. In such prosecutions, as we had occasion to state recently in *United States v. Anzalone*, 555 F.2d 317 (2 Cir. 1977), the jury gives the answer to whether the "immunized" testimony was perjurious, directly by its verdict. When the prosecution is for a substantive offense, however, the alleged perjury is collateral and is not directly decided by the jury. To find, in

such a prosecution, that particular "immunized" testimony was perjurious requires some preliminary finding of fact, or clear documentary evidence as in *United States v. Kahan*, 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974), or, as here and in *Tramunti*, later objective proof.

▮ We must leave open the question of whether, in the normal case a trial judge can resolve in advance, without conducting a mini-trial, that the "immunized" testimony was wilfully false. Here the appellant gave the answer when he conceded that he had committed perjury on his bankruptcy examination. Though he did not concede perjury on all of his answers, he did concede sufficiently on material matters so that other contradictory testimony which was not expressly conceded to be false involved, at the worst in context, error that was harmless.

We limit our holding to a prosecution under the Bankruptcy Act in which the subjects of the direct testimony on trial are likely to be akin to those testified to in the bankruptcy hearing,—much as in perjury prosecutions. We do not believe that *Kahan, supra*, sanctions a broader impeachment under a general immunity statute where a substantive offense is the subject of prosecution and the resort to prior immunized testimony is solely for impeachment on credibility.[4] Nor would we encourage prosecutors to rely on the hope that admissions of perjury will always be forthcoming to save the day.

### IV

▮ The only claim made on behalf of defendant American Identification Products is that the alleged errors as to Moss had a prejudicial "spill-over" effect. We find this claim to be without merit.

---

4. *Kahan, supra*, did not involve an immunity grant. It held that a perjurious statement by a defendant upon arraignment to show indigency and obtain the appointment of counsel could be introduced at trial to show an intent to conceal assets linked to the bribery charged. The claim that such use of the statement "chilled" the defendant's right to appointed counsel or his right to take the stand was rejected. The claim in *Kahan* was more subtle and remote than a claim based upon immunity conferred by statute.

■ The judgment of conviction on Count Three is reversed; the other judgments of conviction are affirmed, since there was no duplication of sentencing on counts which were merged, except for fines.

■ With respect to the fines imposed which aggregated $12,000, we remand for resentence. The District Court fined appellant Moss $1,000 on each of twelve counts with no provision that they should run concurrently. As we have seen, Count One merged into Count Three which failed for insufficiency, and Count Two merged into Count Four. In Counts Eleven and Twelve, since Moss was convicted of fraudulently withholding documents relating to property which was already the subject of Counts One to Four, the fines should not be repetitive. There remain therefore only seven counts on which a fine could properly be imposed: namely, Counts Four, Six, Seven, Eight, Nine, Ten and Fourteen. Hence, if the Judge intended to impose a $1,000 fine on each count to which appellant could properly be sentenced, that could be done only as indicated.

Affirmed in part, reversed in part and remanded.