**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 19, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JAMES DEWEY MOSER,

      Defendant - Appellant.

No. 10-3288
(D.C. No. 5:09-CR-40086-CM-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

Defendant-Appellant, James D. Moser, was convicted by a jury of

conspiracy to commit bankruptcy fraud in violation of 18 U.S.C. § 371 (Count 1),

bankruptcy fraud in violation of 18 U.S.C. §§ 2, 152(1) (Counts 2-8), and

bankruptcy fraud in violation of 18 U.S.C. §§ 2, 157 (Count 10). He was

sentenced to 121 months' imprisonment. Mr. Moser appeals, arguing that Counts

3-8 of the indictment were multiplicitous, and that there was insufficient evidence

to convict him on Count 2. Our jurisdiction arises under 28 U.S.C. § 1291 and we

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

affirm.

<u>Background</u>

This case involves sixteen acres of land and a barn located on that land in Johnson County, Kansas, owned by Jeffrey Miller (Miller Enterprises).  Aplt. Br. 2.  Miller Enterprises leased the land and barn to Hallmark Arabian Farms LLC (HAF), whose employees offered riding lessons and cared for boarded horses.  <u>Id.</u> Mr. Moser was a member and manager of HAF.  HAF entered into a lease and option agreement with Miller Enterprises on August 1, 2003, 1 R. 203-11, and was behind on its lease payments and in default of the terms of the option by July 2004.  Aplt. Br. 2.  On March 11, 2005, Miller Enterprises filed proceedings to evict HAF due to unpaid rent in the amount of $64,000.00.  <u>Id.</u> at 2-3; 1 R. 340-44, 356.

<u>Chapter 7 Proceeding</u>

On April 27, 2005, Mr. Moser, and his wife, Doris Moser, filed a voluntary Chapter 7 bankruptcy petition.  In a Chapter 7 case, the debtor must disclose all assets and liabilities in bankruptcy schedules and on a Statement of Financial Affairs (SOFA).  The petition and schedules are signed by the debtor under penalty of perjury.  In a Chapter 7 case, a trustee is appointed to recover the debtor's assets and to pay off creditors.  The trustee also holds a "section 341 hearing" where the creditors meet and examine the debtor under oath regarding

the information contained in the schedules and SOFA. Mr. Moser's trustee, David Seitter, conducted section 341 hearings on June 20, 2005 and September 13, 2005. Mr. Moser signed an Acknowledgment of Debtor Responsibilities on June 17, 2005—stating that he understood his legal obligation to report to the trustee about all assets and creditors, and to cooperate with the trustee during his case. 2 Supp. R. on Appeal, Govt. Ex. 1-8. Thereafter, on June 24, 2005, Mr. Moser entered into a sub-lease agreement with Mr. Tom Heshion, leasing him stalls on the property for $3,500 per month and selling certain tools, machinery, and furniture to him for $5,000. 2 Supp. R. on Appeal, Govt. Ex. 3-1. He did not disclose this agreement to his trustee. Mr. Moser received a discharge of debt on May 17, 2006. Scott Goldstein, an attorney who worked with Mr. Seitter and assisted him on the case, testified that at the time of discharge, there continued to be confusion regarding Mr. Moser's assets, partially due to his unwillingness to be forthright.

On the SOFA, Mr. Moser listed a *transfer* to Jeff Miller in October 2004 of "Gold and Silver Coins and Collectible Stamps" valued at $125,000. 1 R. 213. At trial, Mr. Goldstein explained the difference between a transfer and a pledge of property—a transfer indicates that the debtor no longer has control of the property, a pledge as collateral indicates that the debtor still owns the property, but that it is subject to a lien or security interest. 3 R. 74-75. Over time, Mr. Moser equivocated on whether the stamps or coins were returned to him. Id. at

- 3 -

85.  Mr. Goldstein eventually learned from Mr. Miller's attorney that all of these items had been returned to Mr. Moser.  Id. at 85-86.

Mr. Moser also disclosed on his schedules that he held a stock interest of unknown value in HAF, 1 R. 215, but failed to disclose that he also owned an option to purchase the real property on which HAF was located from Mr. Miller. The option to purchase the 16.5 acres, entered into on August 1, 2003, was valued at $1.5 million.  1 R. 331.

Mr. David Seitter, as trustee, testified that he did not find out about the assignment or pledging of collateral of gold and silver coins until December 2005, at the earliest.  3 R. 285-86.  He also felt that since HAF was listed on the schedules as having an unknown value, he needed to further investigate its value. Id. at 287, 313.  The initial 341 hearing on June 20, 2005 did not answer all of Mr. Seitter's questions, so a second was scheduled on September 13, 2005.  In this hearing, Mr. Moser did not disclose that he had reached a confidential settlement agreement ending the pending lawsuit with Mr. Miller on August 31, 2005—only two weeks earlier.  2 Supp. R. on Appeal, Govt. Ex. 5-1.  Mr. Seitter did not find out about the settlement until he received a letter from Mr. Moser's bankruptcy attorney on or about November 29, 2005.  2 Supp. R. on Appeal, Govt. Ex. 5-4.  The letter disclosed the settlement terms, giving HAF an option to purchase the real estate for $1,140,000 before October 15, 2005.  Id.  Mr. Moser also signed an "Acknowledgment, Receipt of Collateral and Release" on August

31, 2005, providing that all of the property he had delivered to Mr. Miller for purposes of securing obligations was returned to him. 2 Supp. R. on Appeal, Govt. Ex. 5-2. On October 25, 2005, HAF assigned the option to purchase the land, 2 Supp. R. on Appeal, Govt. Ex. 6-1, to Malcolm Knarr. 2 Supp. R. on Appeal, Govt. Ex. 6-2. In return, Mr. and Mrs. Moser could choose between a 50% equity position in the real property, or a commission. 2 Supp. R. on Appeal, Govt. Ex. 7-1. HAF also entered into a sublease agreement whereby Obeyan Arabian Farms and Thomas Heshion were to pay a security deposit in the amount of $5,000 to HAF. 2 Supp. R. on Appeal, Govt. Ex. 8-2.

### Chapter 13 Proceeding

Mr. Moser filed a Chapter 13 bankruptcy petition on April 3, 2007. 2 Supp. R. on Appeal, Govt. Ex. 10-5. In a Chapter 13 proceeding, a debtor proposes to repay creditors through a plan. Id. Mr. William Griffin was appointed trustee in this case. In the Chapter 13 petition, Mr. Moser asserted that he had a 50% equity position in the real property that was the subject of the option, with an estimated market value of $1,550,000, but did not mention coins or stamps. Id.

On May 9, 2007, Mr. Griffin conducted a 341 hearing where he questioned Mr. Moser about his equity position in the option, and the status of any coins or stamps. 3 R. 407-09. At this hearing, Mr. Moser testified that he had received some of the coins back from Mr. Miller, but not all of them. Id. at 417-18.

Initially, he had not made reference on the schedules to coins or stamps, but he amended the SOFA after the hearing to include a transfer to Miller in 2004 of coins and stamps valued at $10,000. Id. at 402; Ex. 10-6.

Prior to sentencing, Mr. Moser filed a motion to impose a single punishment for his convictions on Counts 2-8 and to vacate Counts 3-8 on the basis that the convictions were multiplicitous. 1 R. 282-292. The district court denied the motion, holding that each charge was based on a distinct act of concealment, each occurring at different time after the duty to disclose had arisen. Sent. Hr'g –Part 1 at 3-5.

## Discussion

We review claims of multiplicity de novo. See United States v. Johnson, 130 F.3d 1420, 1424 (10th Cir. 1997). "Where multiple counts for which a defendant is convicted cover the same criminal behavior, our review is limited to whether Congress intended multiple convictions and sentences under the statutes." United States v. Morehead, 959 F.2d 1489, 1506 (10th Cir. 1992), *aff'd on rehearing sub nom.* United States v. Hill, 971 F.2d 1461 (10th Cir. 1992) (en banc). Our review of the denial of a motion for judgment of acquittal is also de novo. See United States v. Irvin, 656 F.3d 1151, 1162 (10th Cir. 2011). We view the evidence in the light most favorable to the government and ask whether "any rational trier of fact could have found the defendant guilty of the crime beyond a

reasonable doubt." Id.

A.    Counts 3-8

Mr. Moser contends that Counts 3-8 of his indictment are multiplicitous. Aplt. Br. 11-18.  "Multiplicitous counts—those which are based on the same criminal behavior—are improper because they allow multiple punishments for a single criminal offense."  United States v. McIntosh, 124 F.3d 1330, 1336 (10th Cir. 1997).  In McIntosh, this court found that Count 3, charging defendant with bankruptcy fraud by concealment in violation of 18 U.S.C. § 152(7) for failure to disclose a fee, and Count 13, charging him with making a false statement in violation of 18 U.S.C. § 152(3), were multiplicitous.  Id. at 1336-37.  The court reasoned that the defendant had an obligation to disclose the fee he received, but "[i]nstead of making the required disclosure—which would have avoided the charges brought under Count 3—he made the false statement which is the subject of Count 13."  See id. at 1337; see also United States v. Montilla Ambrosiani, 610 F.2d 65, 68 (1st Cir. 1979) (calling charges of concealment and false statement for the same act "another name for the same rose").  Since the defendant "committed both offenses charged with the same act," the charges were multiplicitous.  See McIntosh, 124 F.3d at 1337.

In United States v. Sturmoski, the defendant was sentenced to two consecutive thirty-year sentences for two convictions under 18 U.S.C. § 924(c). 971 F.2d 452, 460 (10th Cir. 1992).  He was convicted of maintaining a place to

manufacture a controlled substance [Count III], attempting to manufacture a controlled substance [Count IV], carrying and using a firearm to facilitate maintaining an establishment for the purpose of methamphetamine manufacture [Count V], and carrying and using a firearm to facilitate the attempt to manufacture methamphetamine [Count VI]. Id. at 460-61. He argued that the convictions punished him twice for the possession of a firearm in the commission of only one offense, and that maintaining a place to manufacture methamphetamine inherently suggests an attempt to manufacture. Id. at 461. The court stated that "[t]wo separate convictions . . . can arise from an essentially identical set of facts as long as double jeopardy is not implicated." Id.

The court analyzed whether Congress intended convictions and sentences for different crimes based upon the same underlying offenses. Id. First, a court should look to the plain language of the statute, then to legislative history. Id. If legislative intent is unclear, a court must apply the "rule of statutory construction" from Blockburger v. United States, 284 U.S. 299 (1932). Id. The Blockburger rule states that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304. In Sturmoski, the plain language and relevant legislative history strongly indicated that Congress intended to create a new crime that would punish the use of

property for manufacturing narcotics, as distinct from statutes criminalizing mere possession and manufacture of controlled substances. 971 F.2d at 461-62.

Turning to the concealment in this case, we note that other circuits have clearly stated that "[w]hen the concealment of assets belonging to the bankrupt occurs after a receiver or Trustee has been appointed . . . each separate act of concealment is a separate violation of [Section 152]." See United States v. Moss, 562 F.2d 155, 160 (2d Cir. 1977). The Moss court explained:

> In each such instance there is a separate act, taken at a discrete time, accompanied by the requisite intent. Any other rule would permit a defendant who has committed a first concealment to steal more on the theory that he would never become a sheep but always remain a lamb. It is not in the interest of deterrence to permit a multiplication of criminal acts to be treated as a bonus for the criminal actor free from additional penalty.

Id. In Moss, the court found that the defendant could be charged separately for the conversion of checks received on three separate occasions after the bankruptcy proceeding began. Id. Defendant could also be charged for the concealment of a fork-lift truck and the illegal transfer of three Benchmaster presses at the time of an auction sale of inventory. Id. Similarly, the Ninth Circuit held in United States v. Kaldenberg that each separate act of concealment could be charged, and punished, separately. 429 F.2d 161, 164 (9th Cir. 1970). In that case, a party in bankruptcy failed to disclose rental payments he received from tenants after a receiver had been appointed. Id. at 162. The defendant argued that the "receipt and retention of the seven different payments constituted

but one crime." Id. The court disagreed, however, and found that "[e]ach time appellant received the rental payment a new set of facts arose and he was confronted with a new decision on whether to transfer the new assets to the receiver or to conceal them." Id. Finally, the Eleventh Circuit held in United States v. Melton, 763 F.2d 401 (11th Cir. 1985), that the concealment of two separate automobiles from a bankruptcy trustee constituted two separate offenses. Id. at 402. The court stated that "[i]f successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie." Id. (quoting Blockburger, 284 U.S. at 302).

Mr. Moser claims that several of the Counts charge him with committing the same act of concealment. For example, he alleges that the lease to Mr. Heshion, charged in Counts 3 and 8, and the assignment of the Option in Counts 4, 6, and 7 constitute the same act of concealing the lease and option of August 1, 2003, charged in Count 2. Aplt. Rep. Br. 2-6. More specifically, Mr. Moser claims that the document supporting Count 3 stated the parties' intent to enter into a sublease of the facilities, and that Count 8 is the actual sublease. Id. at 6. Moreover, he alleges that the assignment of the settlement agreement to Mr. Knarr required three documents—the contents of which are charged in separate Counts. Id. at 7.

In reality, Counts 3-8 charged Mr. Moser with separate concealments of different property interests on different dates. See Indictment, at 6-7, United

States v. Moser, No. 06-40068-07-JAR, 2010 WL 2757281 (D. Kan. Jul. 12, 2010). According to the rule in Blockburger, where each offense requires proof of a different act, each concealment can be charged separately. 284 U.S. at 304. Similarly, if this court were to follow the precedent from different circuits, the outcome would be the same. Like the defendant in Kaldenberg who accepted separate rent payments, Mr. Moser made separate decisions to conceal additional agreements and assets from his trustee, though they related to the same parcel of land—each a distinct act. Unlike the defendant in McIntosh, Mr. Moser was not charged for two separate crimes based on the same exact action. Instead, he concealed various property interests over the course of several months in 2005. For example, the agreement charged in Count 3 entitled Mr. Moser to a monthly rent, plus additional income for the sale of personal property and a consulting fee. 2 Supp. R. on Appeal, Govt. Ex. 3-1. The charge in Count 8 is based on a document signed months later, entitling Mr. Moser to a security deposit in the amount of $5,000. 2 Supp. R. on Appeal, Govt. Ex. 8-2. Neither of these were reported to his trustee. Similarly, all of the other Counts charge that Mr. Moser received separate, additional income or consideration, although the documents may have been related to the same parcel of land. Therefore, the district court was correct and Counts 3-8 are not multiplicitous.

B.      Motion for Judgment of Acquittal on Count 2

Mr. Moser filed a motion for judgment of acquittal as to all counts of

conviction, 1 R. 168-69, but only appeals as to Count 2. Aplt. Br. 18. He claims that "[t]here was no evidence presented at trial that would lead a reasonable jury to find he willfully concealed information . . . ." Id. Before the district court, Mr. Moser argued that the counts in the indictment concern only business assets of HAF, and not his own personal assets. 1 R. 170. Therefore, he claims that he was under no obligation to report these assets to the trustee. Id. Count 2 alleges that Mr. Moser failed to include in his bankruptcy schedules an option to purchase real property and $125,000 in gold and silver coins and collectable stamps pledged as collateral and eventually returned to him. See Indictment, at 6.

As noted previously, given our standard of review, if a rational trier of fact could have found that the option and/or the coins and stamps were part of the bankruptcy estate, the evidence is sufficient. Further, "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." See Griffin v. United States, 502 U.S. 46, 56-57 (1991); see also United States v. Fredette, 315 F.3d 1235, 1243 (10th Cir. 2003). Here, Count 2 charged Mr. Moser with concealing both the option to purchase the real property for $1,400,000 *and* the $125,000 in gold and silver coins and collectable stamps. See Indictment, at 6. The jury's general verdict found Mr. Moser guilty of Count

- 12 -

2. 1 R. 165. Based on the rule in Griffin[1], if any rational trier of fact could have found concealment of one of the two assets we may affirm without reaching the other asset. See United States v. Lanoue, 71 F.3d 966, 982-83 (1st Cir. 1995) (holding that where three possible conspiracies were charged in the same count, and there was sufficient evidence to support one, there was no need to reach sufficiency claims for the other conspiracies). Therefore, since we find sufficient evidence to support a conviction based on the concealment of the coins and stamps, it is unnecessary to address concealment of the option.

Ample evidence suggests that Mr. Moser concealed his pledge of the coins and stamps as collateral. In his Chapter 7 SOFA, Mr. Moser listed that he had transferred $125,000 worth of coins and collectable stamps to Mr. Miller in October 2004. 2 Supp. R. on Appeal, Govt. Ex. 1-3, p. 5. He did not indicate that it was pledged as collateral. Yet, the coins and stamps were transferred to Mr. Miller as collateral, and many documents preceding the Chapter 7 bankruptcy petition called it such. 2 Supp. R. on Appeal, Govt. Ex. 2-2 ("WHEREAS, it is necessary to transfer certain assets into the Corporation in order that the Corporation can be collateralized on funds it is loaning James D. Moser . . ."); Ex. 2-3 (document entitled "Collateral for Rent of 12700 W 151st Street Hallmark

---

[1] In Griffin, the Supreme Court held that when a defendant is charged with a conspiracy alleged to have two objects, but is implicated in only one, a general guilty verdict may be upheld even when evidence for one object was insufficient. 502 U.S. at 47-48.

Arabian Farms" and pledging silver and gold in the amount of $30,000"); Ex. 2-4 ("Mr. Moser's collateral consisted of valuable collectible stamps, valuable collectible coins, bullion and other collectible valuables. On that evening, there is no question but that Mr. Moser delivered over $60,000 worth of such assets to Mr. Miller and Mr. Middleton in return for Mr. Miller's willingness to consider a loan . . . ."). Moreover, On August 31, 2005, Mr. Moser signed an "Acknowledgment, Receipt of Collateral and Release" agreeing that all property previously delivered to Miller Enterprises, Inc., had been returned in the same condition as when it was transferred. 2 Supp. R. on Appeal, Govt. Ex. 5-2. Mr. Moser did not disclose to his trustee that the collateral had been returned. Furthermore, an email from Miller Enterprises, Inc.'s attorney, Kristie Orme, dated August 30, 2005, stated that it was her understanding that "the collateral is the personal property of Hallmark's Manager, James D. Moser, who is in bankruptcy." 2 Supp. R. on Appeal, Govt. Ex. 2-9. She stated that Mr. Miller was willing to return the collateral so that Mr. Moser could disclose it to his bankruptcy trustee. Id. Mr. Moser was examined under oath at his second 341 hearing on September 13, 2005—nearly two weeks after receiving the returned property. 2 Supp. R. on Appeal, Govt. Ex. 1-5A. Mr. Moser never disclosed that the collateral had been returned. Id.

Mr. Moser also failed to disclose the return of all of the coins and stamps in his Chapter 13 pleadings. 2 Supp. R. on Appeal, Govt. Ex. 10-5. At his 341

hearing for the Chapter 13 proceedings on May 9, 2007, Mr. Moser admitted that he pledged the coins and stamps as collateral. 2 Supp. R. on Appeal, Govt. Ex. 1-10A, 19:45-19:49. He also claimed that he had not received all of the coins back from Mr. Miller, Id. at 20:54-21:08, but that "some" of the stamps had been returned. Id. at 20:19, 29:01. After this hearing, Mr. Moser amended his SOFA to include coins and stamps valued at $10,000 transferred to Mr. Miller. 2 Supp. R. on Appeal, Govt. Ex. 10-6. He had previously reported their value as $125,000. 2 Supp. R. on Appeal, Govt. Ex. 1-3. Mr. Moser's statements and SOFAs in the Chapter 13 case contradicted his "Acknowledgment, Receipt of Collateral and Release," 2 Supp. R. on Appeal, Govt. Ex. 5-2, which stated that he received back *all* personal property delivered to Mr. Miller on August 31, 2005—property that had originally been valued at much more than $10,000. 2 Supp. R. on Appeal, Govt. Exs. 2-2. 2-3, 2-4, 2-6. Therefore, based on the evidence, a reasonable trier of fact could have found Mr. Moser guilty of bankruptcy fraud for concealing the coins and stamps beyond a reasonable doubt.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge